IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| COLLEGE DEMOCRATS OF NORTH CAROLINA, ZAYVEON DAVIS, ZACH POWELL, ROSE DAPHNE, and RAQUEL NELSON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:26-cv-92 |
| NORTH CAROLINA STATE BOARD OF ELECTIONS; SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections; FRANCIS X. DE LUCA, in his official capacity as Chairman of the North Carolina State Board of Elections; STACY EGGERS IV, in his official capacity as Secretary of the North Carolina State Board of Elections; ROBERT RUCHO, JEFF CARMON, and SIOBHAN O'DUFFY, in their official capacities as members of the North Carolina State Board of Elections; JACKSON COUNTY BOARD OF ELECTIONS; BILL THOMPSON, in his official capacity as Chairman of the Jackson County Board of Elections; WES HANEMAN, in his official capacity as Secretary of the Jackson County Board of Elections; ROY OSBORN, JAY PAVEY, and BETSY SWIFT, in their official capacities as members of the Jackson County Board of Elections; GUILFORD COUNTY BOARD OF ELECTIONS; EUGENE LESTER III, in his official capacity as Charmain | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

of the Guilford County Board     )
of Elections; and CAROLYN         )
BUNKER, FELITA DONNELL, KATHRYN )
SKEEN LINDLEY, and PETER          )
FRANCIS O'CONNELL, in their       )
official capacities as members    )
of the Guilford County Board of   )
Elections,                        )
                                  )
        Defendants.               )

## ORDER

Before this court is Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction ("TRO/PI Motion"), (Doc. 10). This motion has been considered on an expedited schedule. Plaintiffs filed their initial complaint on January 27, 2026, (Doc. 1), and their amended complaint on January 29, 2026, (Doc. 4). The following day, on January 30, 2026, Plaintiffs filed their TRO/PI Motion, (Doc. 10), with a memorandum in support, (Doc. 11), and on January 31, 2026, they filed a Motion to Expedite Briefing Schedule for Motion for TRO or Preliminary Injunction ("Expedited Briefing Motion"), (Doc. 12). On February 1, 2026, this court denied Plaintiffs' TRO/PI Motion insofar as it sought issuance of an ex parte temporary restraining order. (Doc. 13 at 2-3.)[1] This court granted Plaintiffs' Expedited Briefing Motion and set the TRO/PI Motion

---

[1] All citations in this Order to documents filed with the court refer to page number located on the bottom right hand corner of the documents as they appear on CM/ECF.

- 2 -

on an expedited briefing schedule and for hearing. (Id.) Defendants North Carolina State Board of Elections and its members (collectively, "State Board"), (Doc. 28), Defendants Guilford County Board of Elections and its members (collectively, "Guilford Board"), (Doc. 29), and Defendants Jackson County Board of Elections and its members (collectively, "Jackson Board"), (Doc. 31), each submitted responses to Plaintiffs' motion on February 4, 2026. A hearing on the motion was held on February 5, 2026. (See Docket Entry 02/05/2026.) After careful consideration, this court will deny Plaintiffs' motion.

This is a dispute over the location and allocation of sites for same day registration ("SDR") and early voting in the 2026 midterm primary election. Under North Carolina law, county boards of elections develop early voting plans for each election that must conform to certain statutory requirements. N.C. Gen. Stat. §§ 163-166.35, -166.40. A county board must unanimously adopt such a plan for it to go into effect, but if the county board fails to do so, the State Board may adopt a plan for the county upon petition of a member or members of that county board. N.C. Gen. Stat. § 163-166.35(a). The State Board may consider for adoption competing plans submitted to it by

- 3 -

petitioning members of that county board. Id. That is what happened here.

Both the Jackson Board and the Guilford Board failed to unanimously adopt an early voting plan for the 2026 midterm primary. In a three-to-two vote, the Jackson Board adopted a plan that did not include an SDR/early voting site on the campus of Western Carolina University ("WCU"), though there had been such a site in every primary and general election since 2016. (Doc. 4 ¶ 62; see Doc. 31 at 1; Doc. 11-2 at 6 tbl. 2.) In a three-to-two vote, the Guilford Board adopted a plan that did not include SDR/early voting sites on the campuses of University of North Carolina at Greensboro ("UNC-G") and North Carolina A&T State University ("NC A&T"). (Doc. 4 ¶ 82; see Doc. 29 at 3-4.) While there had been such sites in the 2020 and 2024 primary and general elections, UNC-G and NC A&T have never hosted early voting sites in a midterm election cycle. (Doc. 29 at 9; Doc. 11-2 at 6 tbl. 2.) The three-member majorities of the Jackson and Guilford Boards petitioned the State Board to adopt their respective majority plans that did not include on-campus SDR/early voting sites; and the two-member minorities petitioned the State Board to adopt their respective minority plans that did include on-campus SDR/early voting sites. (Doc. 28 at 4; see

- 4 -

Doc. 4 ¶¶ 90, 93.) The State Board adopted both majority plans. (Doc. 4 ¶ 95.)

Plaintiffs allege that the Jackson, Guilford, and State Boards' decision to not locate SDR/early voting sites at WCU, NC A&T, and UNC-G violated their constitutional rights. More specifically, they claim that Defendants "violate[d] the Twenty-Sixth Amendment by targeting voting sites used predominantly by college students, who are overwhelmingly young," (Doc. 4 ¶ 133), and they claim that the adopted plans place an undue burden on their right to vote in violation of the First and Fourteenth Amendments, (id. ¶¶ 141-43). On the basis of these claims, Plaintiffs move this court to issue "a preliminary injunction enjoining Defendants from enforcing or giving any effect to the closing of the on-campus early-voting sites at WCU, [NC] A&T, and UNC-G during the early voting period for the March 2026 primary election." (Doc. 10 at 1.) Defendants oppose Plaintiffs' motion. (Docs. 28, 29, 31.)

A preliminary injunction, the relief that Plaintiffs presently seek, "is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, the moving party must establish four prongs: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in

the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Id. at 20. The moving party bears the burden of "clearly establish[ing] entitlement to the relief sought," and "[c]ourts considering whether to impose preliminary injunctions must separately consider each Winter factor." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017). For the following reasons, this court will deny Plaintiffs' motion for preliminary injunction.

First, based on the preliminary factual record before it, this court cannot find that Plaintiffs have established standing such that this court can grant the preliminary injunctive relief they seek.[2] A plaintiff must establish Article III standing to seek injunctive relief. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). The Supreme Court has established that "the irreducible constitutional minimum of standing contains three elements: injury in fact, causation, and redressability." Diamond Alt. Energy, LLC v. EPA, 606 U.S. 100, 111 (2025) (internal quotation marks and citation omitted). "[R]edressability requires the plaintiff to demonstrate that the injury would likely be redressed by judicial relief." Id.

---

[2] This finding is separate and distinct from the standing, and redressability, applicable in determining any final relief. That issue is not presently before this court.

(internal quotation marks and citations omitted). The redressability prong "become[s] problematic when third persons not party to the litigation must act in order for an injury to . . . be cured." Doe v. Va. Dep't of State Police, 713 F.3d 745, 755 (4th Cir. 2013).

In this court's view, redressability is "problematic" here because the preliminary remedy that Plaintiffs seek for their alleged injury depends on the actions of third parties beyond this court's control. That is, WCU, UNC-G, and NC A&T. Plaintiffs allege that they have been injured by Defendant's "closing" or "removal" of early voting sites on these campuses. (Doc. 4 ¶¶ 5-7, 13, 133, 136, 143; see Doc. 11 at 2-3, 15-21.) Therefore, they move this court "to preliminarily enjoin Defendants from closing the on-campus voting sites," or, in other words, requiring Defendants to open sites at WCU, UNC-G, and NC A&T. (Doc. 11 at 24; Doc. 10 at 1.) However, those universities are independent entities that are not party to this case and not subject to this court's equitable powers. See Fed. R. Civ. P. 65(d); Aevoe Corp. v. AE Tech Co., Ltd., 727 F.3d 1375, 1384 (4th Cir. 2013) ("[A] court generally may not enjoin a non-party to the action before it."). Thus, the redressability issue: the likelihood that Plaintiffs' alleged injury will be redressed by the preliminary injunction they seek depends on the

discretion of these universities to host early voting sites in their facilities.

At present, Plaintiffs have not adduced sufficient facts to show that the universities likely will allow Defendants to open early voting sites on their campuses. At the hearing on this motion, Plaintiffs argued that such likelihood was indicated by the uncontested facts that (a) the universities have hosted early voting sites in previous elections, and (b) WCU had agreed to provide the facilities for an early voting site before the State Board adopted the Jackson Board's majority plan. This is some support, but not enough in light of the compounding timing issues that this preliminary injunction motion presents, and which are also discussed below with respect to Purcell. The 2026 midterm primary election is imminent: election day is March 3, 2026, and early voting begins on February 12, 2026, (Doc. 4 ¶ 11), and continues for seventeen days thereafter, (Doc. 28 at 17). That the universities hosted early voting sites in prior elections, or that one of them indicated over a month ago that it could do so in this election, is one thing; whether they are able or willing to do so now, only days away from the start of the early voting period, is another. On the preliminary factual record before it, this court finds that it is at most speculative to suggest that granting the preliminary injunction

that Plaintiffs seek would result in the opening of on-campus early voting sites at WCU, UNC-G, or NC A&T in the imminent 2026 midterm primary election.[3]

Second, and interrelated, this court finds that enjoining Defendants' early voting plans would violate the Purcell principle. See Purcell v. Gonzalez, 549 U.S. 1, 4-5 (2006). Purcell "stands for the principle that 'federal courts ordinarily should not enjoin a state's election laws in the period close to an election,' and when 'lower federal courts contravene that principle,' the Supreme Court will stop them." Pierce v. N.C. State Bd. of Elections, 97 F.4th 194, 226 (4th Cir. 2024) (quoting Merrill v. Milligan, 142 S. Ct. 879, 879-880 (2022) (mem.) (Kavanaugh, J., concurring)). Underlying this principle is the common-sense notion that "[w]hen an election is close at hand, the rules of the road must be clear and settled," and "[l]ate judicial tinkering with elections law can lead to disruption and unanticipated and unfair consequences for candidates, political parties, and voters, among others." Milligan, 142 S. Ct. at 880-81. One such unanticipated consequence is "voter confusion and consequent incentive to remain away from the polls." Purcell, 549 U.S. at 4-5.

---

[3] For example, N.C. Gen. Stat. § 163-166.35(c) "set[s] out a three-month process for requesting a facility and addressing any objections from the building owner." (Doc. 30 ¶ 26.)

- 9 -

As previously mentioned, the 2026 midterm primary is "close at hand," with the early voting period to start in less than a week and election day less than a month away. Among other potential disruptions or unfair consequences, this court would risk causing voter confusion were it to issue a preliminary injunction now. This risk stems not only from the fact that "public notice of the locations and schedules for early voting was first given by January 16, 2026," (Doc. 28 at 7), but from the uncertain outcome of an injunction. As already discussed, it is merely speculative that the opening of on-campus early voting sites would result from this court granting Plaintiffs' motion for preliminary injunction. One unintended consequence of such an injunction, then, is that it could cause voters to alter their registration or voting plans in the belief that they will be able to use on-campus early voting sites that may not, in fact, open. It is because of potential disruptive effects such as this that Purcell counsels against "judicial tinkering" when an election "is close at hand." Milligan, 142 S. Ct. at 880-81. This court is bound to follow Purcell where it applies, and this court finds it applicable here.

Finally, this court cannot find that Plaintiffs are "likely to succeed on the merits." Winter, 555 U.S. at 20. Plaintiffs' Twenty-Sixth Amendment claim presents novel legal issues, and

there remains "a dearth of guidance" on what test applies to such a claim. Democracy N.C. v. Hirsch, No. 1:23-CV-878, 2024 WL 1415113, at *9 (M.D.N.C. Apr. 2, 2024) (quoting N.C. State Conf. of the NAACP v. McCrory, 182 F. Supp. 3d 320, 522-23 (M.D.N.C. 2016), rev'd on other grounds, 831 F.3d 204 (4th Cir. 2016)). Beyond warning that "it is far from clear that the Twenty-Sixth Amendment should be read to create a cause of action that imports principles from the Fifteenth-Amendment jurisprudence," Lee v. Va. St. Bd. of Elections, 843 F.3d 592, 607 (4th Cir. 2016), the Fourth Circuit has not addressed the standard for Twenty-Sixth Amendment claims. Recently, however, two other circuits have addressed the scope of that Amendment. See Tex. Dem. Party v. Abbott, 978 F.3d 168, 184 (5th Cir. 2020); Tully v. Okeson, 78 F.4th 377, 383 (7th Cir. 2023).

This court finds persuasive the Fifth and Seventh Circuits' opinions in Abbott and Tully, respectively. Those authorities guide this court's finding that Plaintiffs, although demonstrating a justiciable issue, have failed to demonstrate the likelihood of success on the merits on their Twenty-Sixth Amendment claim necessary to require injunctive relief. That is, based on the preliminary record before it, this court finds that Plaintiffs have not established that Defendants' decision not to locate early voting sites at WCU, UNC-G, and NC A&T imposed a

- 11 -

"material burden on [their] exercise of the franchise," Tully, 78 F.4th at 387, or "made it more difficult for [Plaintiffs] to exercise [their] right to vote relative to the status quo," Abbott, 978 F.3d at 192, such that this court could conclude Plaintiffs are likely to succeed on the merits of their Twenty-Sixth Amendment claim.[4]

Similarly, this court cannot find that Plaintiffs are likely to succeed on the merits of their "undue burden" claim under the First and Fourteenth Amendment. "[T]he Anderson-Burdick test has generally been applied to claims concerning ballot access" such as this. Fusaro v. Cohan, 930 F.3d 241, 258 (4th Cir. 2019). In applying Anderson-Burdick, "the court must balance the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's

---

[4] As discussed during the hearing, there are a myriad of factors that affect voter turnout. Thus, Plaintiffs' expert's opinion that "[c]losing on-campus early voting centers leads to reduced student turnout, by both making a key voting method less available and requiring travel to more distant off-campus locations, and by disrupting voting habits developed over time," (Doc. 11-2 at 5), is neither controlling nor compelling at this stage. Other factors also lead to reduced student turnout, as is clear from the data relied upon by Plaintiffs' expert which shows reduced student turnout for non-midterm primary elections as compared to general elections at all three campus sites. (Id. at 6.) A commute to a voting site is not itself a material burden, see Tully, 78 F.4th at 387, and many, if not most, voters are required to obtain transportation to a voting site. Further, this court is not aware of, nor have Plaintiffs cited, any cases that suggest voters have standing to compel voting at the same locations as in the past.

interests in ensuring that order, rather than chaos, is to accompany the democratic processes." Id. at 258 (internal quotation marks omitted) (quoting McLaughlin v. N.C. Bd. of Elections, 65 F.3d 1215, 1221 (4th Cir. 1995)).

Here, Plaintiffs assert that Defendants' decision to not locate early voting sites at WCU, UNC-G, and NC A&T burdens their right to vote because lack of adequate transportation options, scheduling issues, and informational deficits make other early voting sites more difficult to access. (Doc. 11 at 2-4, 20-21.) Defendants put forward as justifications for their decision the legitimate state interests of administrative efficiency, managing costs and logistical burdens, and uniform application of North Carolina election law. (Doc. 28 at 16-17; Doc. 31 at 10-11; Doc. 29 at 12-16.) The Guilford Board also observes that it has never located early voting sites at NC A&T or UNC-G for midterm election cycles, and, therefore, the decision not to do so for the 2026 midterm primary is justified by long-standing practice. (Doc. 29 at 9, 19; see Doc. 11-2 at 6 tbl. 2.) On the preliminary record before it, this court does not find the burdens on Plaintiffs to be severe, and, further, this court does not find that that the burden on Plaintiffs outweighs the legitimate state interests advanced by Defendants' allocation of early voting sites. Thus, this court cannot find

that Plaintiffs are likely to succeed on the merits of their "undue burden" claim under the First and Fourteenth Amendments.

For the foregoing reasons, this court will deny Plaintiffs' motion for preliminary injunction. Notwithstanding the immediate outcome, this order does not constitute a final order or law of the case and is therefore entered without prejudice to resolution on the merits. The parties have not "had the benefit . . . of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy." Univ. of Tex. v. Camenisch, 451 U.S. 390, 396 (1981).

**IT IS THEREFORE ORDERED** Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction, (Doc. 10), is **DENIED**.

This the  8th  day of February, 2026.

/s/ William L. Osteen, Jr.
United States District Judge